FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

SCOTT DAVID JAMES,            }
                              }
    Plaintiff,                }
                              }    CIVIL ACTION NO.
v.                            }    02-AR-2489-M
                              }
GAME TIME, INC., et al.,      }
                              }
    Defendants.               }

## MEMORANDUM OPINION

Before the court is the motion of defendants, GameTime, Inc. ("GameTime") and Playcore, Inc. ("Playcore"), for summary judgment pursuant to Rule 56(c), F.R.Civ.P. Plaintiff, Scott James ("James"), is suing to recover for personal injuries that he sustained while using a jungle gym manufactured by defendants. James alleges that his injuries were proximately caused by the defendants' negligence, and he also claims that the defendants breached express and implied warranties. Jurisdiction is based on 28 U.S.C. § 1332(a)(2).

*Summary Judgment Facts*

On October 14, 2000, James, who was seventeen years old at the time, went to a friend's house to watch a hockey game on television. While at his friend's house, James consumed two mixed drinks containing a small amount of vodka. Later that evening, James met a group of friends at the playground of the Roosevelt Park Community School in Prince Rupert, British Columbia, Canada. On the playground, there was a "954 Giant

Muscle Man" model jungle gym manufactured by defendants, which included a set of "monkey bars." GameTime sold the jungle gym to the school in about 1985, but took no part in its installation.

The monkey bars consisted of a series of horizontal bars (a horizontal ladder) set between two vertical ladders. These horizontal bars were positioned eight-and-a-half (8.5) feet from the ground, and the distance between the two middle horizontal bars was twenty-two (22) inches. GameTime produced one set of product specifications for two slightly different jungle gyms, the 954 and the 956 Muscle Man models. According to these specifications, the 956 was supposed to be erected at a maximum height of eight-and-a-half (8.5) feet, while the 954 was to be installed at a maximum height of seven-and-a-half (7.5) feet.

While the friends were socializing at the playground, James began to swing from the horizontal rungs of the monkey bars. James then slid his legs upward through the two middle rungs and locked his knees around one of the bars, such that he was hanging upside down. For an unknown reason, James fell from the bars while hanging upside down, striking his head on the surface beneath the bars, which consisted of compact dirt with loose gravel. The impact caused severe neck injuries that have rendered James a quadriplegic. James sued the school district and reached a subsequent settlement of his claims against it.

*Analysis*

Summary judgment is appropriate where the movants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Rule 56(c), F.R.Civ.P. In this case, defendants argue that James has failed to present evidence sufficient to create a genuine issue of fact that the jungle gym was negligently designed, that they negligently failed to provide adequate warnings, or that they breached any express or implied warranties under applicable law. The court agrees, and it will grant defendants' motion and dismiss the action accordingly.

<u>Choice of Law</u>

Defendants contend, without opposition from James, that the substantive law of British Columbia, Canada, governs the claims asserted in this action. According to defendants, this follows from the well known principle that a federal court sitting in diversity applies the choice of law rules of the state in which it sits. *Randolph v. Tenn. Valley Auth.,* 792 F.Supp. 1221, 1222 (N.D. Ala. 1992), *citing Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941). Under Alabama law, "the traditional choice of laws rule of *lex loci delicti*...dictates that the substantive law of the state where the injury occurred is applied when suit is brought in Alabama." *Bodnar v. Piper Aircraft Corp.*, 392 So.2d 1161, 1162 (Ala. 1981); *see Thomas v. FMC Corp.*, 610

3

F.Supp. 912, 914 (M.D. Ala. 1985)(holding that substantive law of Germany, as the situs of the accident in question, governs). Satisfied with the conclusion this analysis yields – that the law of British Columbia governs – the court will turn to the general issue presented by defendants' motion: whether James has presented substantial evidence to support his claims.[1]

Negligent Design, Manufacture, and Failure to Warn

To determine whether James' negligence claim survives defendants' motion, it is first necessary to set forth some of the applicable legal principles under the laws of British Columbia.  The "overriding principle" is that the manufacturer has no right to manufacture "an inherently dangerous article when a method exists of manufacturing the same article without risk of harm."  *Tabrizi v. Whallon Machine, Inc.*, 29 C.C.L.T. (2d) 176, *8 (B.C. S.Ct. 1996).  The manufacturer has two essential duties, "one being the duty to manufacture products that are reasonably safe and the second being the duty to warn of dangers inherent in its products." *Id.* at 9.  The duty to warn only comes into play when there is no method of manufacturing the dangerous article without risk of harm.  *Id.*

To prove that the manufacturer failed to fulfill its first

---

[1] James advances claims under both Alabama and British Columbian law, including Alabama breach of warranty and Extended Manufacturer's Liability Doctrine.  Because Alabama law does not apply, the Alabama law claims are due to be dismissed, and the court will proceed to analyze the proof of James' remaining British Columbian law theories of liability.

4

duty, a plaintiff must prove that the product was not reasonably safe in accordance with a two part test:

>   (a) there was a substantial likelihood of harm; and
>
>   (b) it was feasible to design the product in a safer manner.

According to *Tabrizi*:

> The first branch of the test involves a simple weighing of the evidence.  In turning to the second branch of the test, the courts have applied a risk utility analysis which involves balancing the risks inherent in the product, as designed, considering its utility and costs, against the risks inherent in a safer, alternative product or design, considering its utility and cost.
>
> *****
>
> It is informative, though not determinative, to know what the industry standards are in the relevant manufacturing sector when attempting to determine if a product is reasonably safe.

*Id.*

As for the manufacturer's second duty, the duty to warn:

> [M]anufacturers owe a duty to warn of the dangers inherent in their products except where those dangers are so clearly evident so as to make any warning silly. Some misuse of a product will be so extreme or unforeseeable that the danger is not really inherent in the product but in the user.
>
> *****
>
> Obviously, the discussion of both duties the defendant may have owed to the plaintiff must be couched in the traditional language of the law of negligence which requires proof that a duty was owed which was not met causing foreseeable injury.

*Id.* at 10-11.

Unreasonably Dangerous Monkey Bars?

Defendants contend that there is no evidence the jungle gym was defective in design or manufacture when it was placed in the stream of commerce, or that it had a propensity to injure. To the contrary, they argue that the affidavit of William Shannon ("Shannon"), manager of engineering for GameTime at the time this jungle gym was designed and produced, establishes that the product met all then-current industry safety standards for jungle gyms. Any departure from industry safety standards in this particular jungle gym, defendants maintain, was the result of improper installation, not improper design or manufacture.

James counters that genuine issues of material fact prevent the court from determining, at least on motion for summary judgment, that the defendants were not negligent. James' primary evidence that the product was unreasonably dangerous, as supported by the preliminary report of his expert, Dr. Leonard Lucenko ("Lucenko"), is that the horizontal bars from which he fell were twenty-two (22) inches apart, seven (7) inches farther apart than required by the U.S. Consumer Products Safety Commission ("CPSC") and the American Society for Testing and Materials ("ASTM") guidelines. Also, the monkey bars were eight-and-a-half (8.5) feet from the ground, eighteen (18) inches higher than those same guidelines require. As for GameTime's improper installation argument, James argues that there is no

6

proof of improper installation, which is incorrect in light of Shannon's affidavit, and further contends that the installation specifications provided by defendants were inadequate in any event.

Under the law of British Columbia, there is at least sufficient evidence to survive summary judgment on the threshold question whether the jungle gym presented a substantial likelihood of harm.  The studies and reports that James cites show that, well before the time this jungle gym was produced, consumers and manufacturers alike knew that falls and personal injury often follow from the use of playground equipment.  That is not a condemnation of jungle gyms, but rather a simple recognition that, as the evidence demonstrates, when a person climbs on playground equipment there is a substantial likelihood he will fall.

Despite this conclusion, James has not presented substantial evidence to show that defendants could have feasibly designed the jungle gym in a safer manner.  The core of the legitimate opposition raised by defendants is that the **design** of the jungle gym in question actually met the industry safety guidelines available at the time it was manufactured.  There is no dispute that the 954 model was supposed to be erected at a maximum height of seven-and-a-half (7.5) feet, or that the distance between the center bars, if installed properly, would have been only fifteen

(15) inches.  The only difference between these design specifications and the reasonable alternative urged by James' expert is his expert's opinion that a reasonably safe set of monkey bars would not have exceeded seven (7) feet in height.

The reasonably safe design urged by James' expert draws heavily on CPSC and ASTM guidelines that were published in the early 1990's, several years after this jungle gym was manufactured.  These guidelines recommend maximum inter-bar spacing of fifteen (15) inches and a maximum horizontal ladder height of seven (7) feet.  There is no evidence that the 1981 CPSC standards in force at the time defendants sold this jungle gym required or recommended that monkey bars be installed at a height less than seven-and-a-half (7.5) feet above the ground.

There are two critical problems with James' reliance on the post-manufacture CPSC and ASTM guidelines for the proposition that defendants negligently designed this jungle gym.  First, James has presented no legal authority or argument that a defendant's failure to be prescient with regard to future safety guidelines constitutes a breach of the standard of care under the law of British Columbia.  Second, even assuming the 1990's guidelines were the minimum requirement of a reasonably safe design in the mid-1980's, the design specifications of the jungle gym satisfied those standards in every respect except for a six (6) inch discrepancy in maximum height.  In the absence of any

evidence that this six (6) inch height discrepancy between the 1990's guidelines and the 954 model design rendered the jungle gym unreasonably dangerous, James' claim fails.  Any other departure from the CPSC and ASTM guidelines was a result of improper installation, **not** unsafe design or manufacture.[2]

James also argues that an issue of fact exists as to whether the jungle gym he fell from was the 956; or, if it was in fact the 954, whether the excessive height of the jungle gym as installed was a result of confusion created by defendants in providing one set of specifications that applied to two different models.  His effort to establish an issue of fact as to what model this jungle gym was falls flat in the face of (1) the affidavit testimony of GameTime's former engineer, Shannon, who inspected the jungle gym and states that it was the 954 model; and (2) James' expert's statement that "[t]he evidence indicates" the jungle gym was a 954 model.  To the extent James relies on confusion inherent in the instructions for assembly, he fails to present any evidence, as opposed to his own argument, that the lack of clear installation instructions made the jungle gym

---

[2] James' expert opined in his preliminary report that when the 1990's guidelines came out defendants had a duty to notify prior purchasers of deficiencies in the 954 model.  Assuming *arguendo* that James could have pressed this theory of negligence, he has not.  James' brief makes no mention of a duty to notify purchasers of CPSC and ASTM guidelines that were passed years after the purchase date.  Instead, James argues, without further explanation, that the fact the 954 model as installed did not meet CPSC and ASTM guidelines establishes at least an issue of fact that the defendants were negligent.  At risk of repetition, this argument falls short of establishing a question for jury resolution.

9

unreasonably dangerous.  Finally, the fact that the ground underneath the jungle gym was hard packed dirt cannot be attributed to defendants, particularly in light of the fact that GameTime product materials warned that soft surfaces should be placed under the jungle gym to absorb impact from falls in accordance CPSC standards.

<u>Failure to Warn</u>

James also contends that GameTime breached its duty as a product manufacturer in that it failed to provide adequate warning of the risk of injury associated with falling from the jungle gym.  Under the laws of British Columbia, a manufacturer has a duty to warn of dangers inherent in its product.  The duty to warn, however, is limited by the law's recognition that:

> There can be no obligation to warn against a particular form of conduct or involvement with machinery if either that conduct cannot be anticipated or the injuries which would result from such conduct are so clearly evident that a warning would be ineffective and/or entirely redundant.

*Tabrizi*, *supra* at 11.

Defendants maintain that both limitations apply here, arguing that James hanging upside down was an unforeseeable use of the product and that the risks involved were so clearly evident as to make a warning useless.  The court cannot agree that James hanging upside down was an unforeseeable use of the product, particularly in light of the GameTime promotional photograph that is in evidence and portrays a young girl attempting to hang

10

upside down by her legs from a jungle gym.  However, defendants' second argument – that the danger of James' conduct was so evident as to make a warning ineffective – carries more weight. There is no genuine dispute between the parties that hanging upside down, several feet above the ground, is dangerous in exactly the way that James unfortunately discovered it to be. Nonetheless, because James' use of the product was foreseeable, the court will assume, "to err on the side of caution," that defendants should have provided a warning of the inherent risk in using the jungle gym to hang upside down.  *See id.*

This assumption notwithstanding, James has not presented evidence sufficient to create a material issue of fact for jury resolution.  Rather, because there is an utter lack of evidence that any warning would have prevented the injury James suffered in this case, defendants are entitled to summary judgment.  *See id.* (the court's discussion of the duty to warn "must be couched in the traditional language of the law of negligence which requires proof that a duty was owed which was not met causing foreseeable injury").  The undisputed facts are that the jungle gym was sold to the school in or around 1985, that the defendants had nothing to do with its installation, and that the school did not install the equipment in accordance with the directions that were included.  James has presented no evidence as to what warnings were given or what warnings should have been given.  His

expert does opine that GameTime had a duty to warn the school of the jungle gym's "defective design," but this assertion does nothing to establish an issue of fact as to what an appropriate warning given to the purchaser about the danger of hanging upside down would have done to prevent James' injury.  Conspicuously absent is any evidence that the school should have been warned to tell its students not to hang upside down or that, if so warned, it would have developed an effective way to communicate such a warning to James, who, fifteen years after the purchase of the monkey bars, came on school grounds at night and decided to hang upside down from them.  Because there is no evidence to support a jury finding that defendants' breach of a specific duty to warn was a cause in fact of James' injuries, summary judgment is appropriate.

Breach of Express/Implied Warranties

As defendants correctly point out, James has presented no evidence of any express warranty made by defendants, such that his claim for breach of express warranty is due to be dismissed. As for James' breach of implied warranty claim, defendants point out that the laws of British Columbia require privity of contract between plaintiff and manufacturer to recover for breach of an implied warranty. *See Lyons v. Consumers Glass Co.*, 28 B.C.L.R. 319 (1981).  There is no privity between either defendant and James.  James presents no evidence to establish his breach of

warranty claims, and he did not even address the merits of his claims or of defendants' arguments in his brief in opposition to the motion for summary judgment.  Accordingly, James breach of warranty claims are due to be dismissed.

*Conclusion*

For the foregoing reasons, defendants' motion for summary judgment will be granted by separate order.

DONE this 25th day of March, 2005.

_____

WILLIAM M. ACKER, JR.

UNITED STATES DISTRICT JUDGE